FEDERAL COMMUNICATIONS COMMISSION $v.$
WJR, THE GOODWILL STATION, INC. ET AL.

No. 495.   Argued April 22, 1949.—Decided June 6, 1949.

Solicitor General Perlman argued the cause for petitioner. With him on the brief were *Stanley M. Silverberg, Benedict P. Cottone, Max Goldman, Richard A. Solomon* and *Paul Dobin.*

*Louis G. Caldwell* argued the cause for respondents. With him on the brief for WJR, The Goodwill Station, Inc., were *Donald C. Beelar* and *Percy H. Russell, Jr.*

*Frank U. Fletcher* was also of counsel for the Coastal Plains Broadcasting Co., Inc., respondent.

MR. JUSTICE RUTLEDGE delivered the opinion of the Court.

Most broadly stated, the important question presented by this case is the extent to which due process of law, as guaranteed by the Fifth Amendment, requires federal administrative tribunals to accord the right of oral argument to one claiming to be adversely affected by their action, more particularly upon questions of law. Lest this spacious form of statement be taken as too sweeping and abstract to pose a justiciable issue, we think the specific context of fact and decision out of which the question has arisen must be set forth. But before this is done we should say that, as we understand the Court of Appeals' decision, it has ruled that Fifth Amendment procedural due process requires an opportunity for oral argument to be given "on every question of law raised before a judicial or quasi-judicial tribunal, including questions raised by demurrer or as if on demurrer, except such questions of law as may be involved in interlocutory orders such as orders for the stay of proceedings *pendente lite,* for temporary injunctions and the like," 174 F. 2d 226, 233, and on this basis has remanded this cause to the Federal Communications Commission for oral argument.

Involved in the controversy are two radio stations and the Commission, which is the petitioner here. One of the stations is the respondent WJR. It is licensed by the Commission as a "Class I-A Station,"[1] to broadcast day and night from Detroit, Michigan, on a frequency of 760

---

[1] Federal Communications Commission Rules Governing Standard Broadcast Stations § 3.22 (a): "A 'Class I Station' is a dominant station operating on a clear channel and designed to render primary and secondary service over an extended area and at relatively long distances. Its primary service area is free from objectionable interference from other stations on the same and adjacent channels, and its secondary service area free from interference, except from stations on the adjacent channel, and from stations on the same channel in

kilocycles and with a strength of 50 kilowatts. The other station is the intervenor, Coastal Plains (formerly Tarboro) Broadcasting Company.

Prior to August 22, 1946, Tarboro filed written application with the Commission for a permit to construct a "Class II Station"[2] to broadcast from Tarboro, North Carolina. On that date the Commission granted the application. The permit specified that the new station was to broadcast during the day from Tarboro at a strength of one kilowatt on the frequency of 760 kilocycles, which previously had been used exclusively by WJR. The construction permit was granted without notice to WJR and without oral hearing or other participation by it in the proceedings before the Commission.

On September 10 following, WJR filed with the Commission a written "Petition for reconsideration and hearing." This alleged that the proposed broadcasting range of the Coastal Plains station would cause "objectionable interference" with respondent's broadcast signal. Interference was said to be anticipated principally in certain areas of Michigan where "the field intensity of WJR averages 32 microvolts per meter or less during the day-

---

accordance with the channel designation in Sec. 3.25 or in accordance with the 'Engineering Standards of Allocation'. The operating power shall be not less than 10 kw nor more than 50 kw (also see Sec. 3.25 (a) for further power limitation)." 4 Fed. Reg. 2715.

[2] Federal Communications Commission Rules Governing Standard Broadcast Stations § 3.22 (b): "A 'Class II Station' is a secondary station which operates on a clear channel (see Sec. 3.25) and is designed to render service over a primary service area which is limited by and subject to such interference as may be received from Class I stations. A station of this class shall operate with power not less than 0.25 kilowatts nor more than 50 kilowatts. Whenever necessary a Class II station shall use a directional antenna or other means to avoid interference with Class I stations and with other Class II stations, in accordance with the 'Engineering Standards of Allocation.'" 4 Fed. Reg. 2715.

time hours," [3] but where "WJR provides the best signal available"; limited interference "during the winter season" was also expected within "contours" of field intensity "much higher" than 32 microvolts; interference of unspecified extent was also thought likely in neighboring states, though as to such areas it was conceded that "a better signal is provided by other stations."

On the basis of these allegations WJR asked that the Commission hold a hearing on the Coastal Plains application to which WJR might be made a party or, in the alternative, postpone final action on the Coastal Plains application until the conclusion of the then pending."Clear Channel" [4] proceeding. In that proceeding, essentially legislative in character, the Commission was considering the desirability of changing its rules so as to allow WJR and other stations to increase their broadcast strengths to 500 kilowatts. The basis for the alternative request was WJR's fear that a grant of the Coastal Plains construction permit might prejudice a possible future WJR application for increased signal strength in the event the decision in the clear channel proceeding should so modify the Commission's rules as to facilitate such an application.

Coastal Plains filed an opposition to WJR's petition for reconsideration, asserting among other grounds for denial that WJR had not alleged that the proposed new operation "would cause any interference within the normally protected service area of station WJR" and had neither

[3] For the meaning of the term "field intensity," and for the relation of a broadcast signal's "field intensity" to the legal concept of a licensed radio station's "normally protected contour," see note 5.

[4] Federal Communications Commission Rules Governing Standard Broadcast Stations § 3.21 (a): "A 'clear channel' is one on which the dominant station or stations render service over wide areas and which are cleared of objectionable interference, within their primary service areas and over all or a substantial portion of their secondary service areas." 4 Fed. Reg. 2715.

alleged nor proved "any interference within its normally protected contours." The opposition was based on the theory that under the Commission's regulations WJR's license conferred no right to protection against interference outside its normally protected contours as specified in the regulations, that the interference alleged was outside those contours, and hence WJR's petition was legally insufficient on its face to state any basis for WJR to be made a party to or to be heard in the Coastal Plains proceeding.

No response to the opposition was filed by WJR and some three months later, on December 17, 1946, the Commission denied WJR's application in a written opinion, rendered without prior oral argument. The opinion first disposed of the allegations of interference:

> "Station WJR is a Class I–A station. Under the Commission's Rules and Standards, Class I–A stations are normally protected daytime to the 100 microvolt-per-meter contour. The area sought by petitioner to be protected is, according to the engineering affidavit accompanying the petition, served by Station WJR during the daytime with a signal intensity of 32 microvolts-per-meter or less, and is therefore outside the normally protected contour." [5]

As the Court of Appeals later treated this ruling, it was the equivalent of holding as a matter of law, in

---

[5] The dissenting opinion in the Court of Appeals decision here under review offers a succinct exposition of these technical terms:

"This concept of normal protection in the daytime is clear. The circumference of the protected area is a contour line, which is fixed by measurement of the strength of the radio waves from the particular station. That strength, or intensity, is measured in terms of microvolts (millionths of a volt) or millivolts (thousandths of a volt) per meter, abbreviated as uv/m and mv/m respectively. The wave which is measured is the groundwave, which follows the

judicial parlance essentially as though raised upon demurrer, that WJR's petition did not state facts sufficient to raise any legal issue concerning (indirect) modification of WJR's license or rights under the license. The Commission also denied WJR's alternate request to stay the Coastal Plains application, concluding that postponement of the newly authorized service out of deference to any possible "future assignment of facilities" to WJR "would not serve the public interest."

WJR then appealed to the Court of Appeals. The court agreed that the Commission had not abused its discretion in refusing to stay the Coastal Plains permit until completion of the clear channel proceeding. It held, however, that WJR's claim of objectionable interference with its broadcast signal presented a question of law and, by a closely divided vote, in the broad language quoted

surface of the earth and extends greater or less distances depending upon the nature of the earth, its topography, and such obstacles as noise and steel structures. Generally speaking, the greater the distance from the station, the less the strength of the station signal. The '100 uv/m ground wave contour' named in the Commission's Standards, is the imaginary line which connects all points at which the ground wave of the station is of 100 microvolts per meter strength." 174 F. 2d 226, 244.

The "Commission's Standards" to which the opinion refers are the Standards of Good Engineering Practice Concerning Broadcast Stations. Under the subheading "Engineering Standards of Allocation," paragraph (2) (a) provides as follows: "The Class I stations in Group 1 are those assigned to the channels allocated by Section 3.25, paragraph (a) [including, inter alia, the 760 kilocycle frequency assigned to WJR, 4 Fed. Reg. 2716], on which duplicate nighttime operation is not permitted, that is, no other station is permitted to operate on a channel with a Class I station of this group within the limits of the United States (the Class II stations assigned the channels operate limited time or daytime only) and during daytime the Class I station is protected to the 100 uv/m ground wave contour." 4 Fed. Reg. 2862.

above,[6] that, concerning the merits of that question, the Fifth Amendment assured to WJR the right of oral argument before the Commission. Accordingly, it refused to consider whether the Commission was right in its legal conclusion that areas of signal intensity lower than 100 microvolts per meter were not within the "normally protected contour" of a Class I–A station, reversed the Commission's denial of WJR's petition, and remanded the case for oral argument before the Commission. 174 F. 2d 226. To consider the questions of importance to the administrative process thus determined, we issued our writ of certiorari. 336 U. S. 917.

At the outset we note our complete agreement with the Court of Appeals that the Commission was under no duty to WJR to postpone final action on the Coastal Plains permit until it had disposed of the clear channel proceeding. As the court pointed out, WJR had no vested right in the "supposititious eventualities" that the Commission at some indeterminate time might modify its rules governing clear channel stations. Furthermore, the judicial regulation of an administrative docket sought by WJR "would require [the Court of Appeals] to direct the order in which the Commission shall consider its cases." And this, as the court said, it "cannot do." 174 F. 2d at 231. "Only Congress could confer such a priority." *Federal Communications Commission* v. *Pottsville Broadcasting Co.,* 309 U. S. 134, 145.

Obviously the most important question is the Court of Appeals' ruling that Fifth Amendment due process re-

---

[6] The case was first argued before three justices; Chief Justice Groner and Justices Clark and Prettyman. By direction of the court it was reargued before Justices Stephens, Edgerton, Clark, Wilbur K. Miller and Prettyman. The decision was rendered pursuant to an opinion of Justice Stephens, in which Justices Clark and Miller concurred. Justice Prettyman filed a dissenting opinion in which Justice Edgerton joined.

quired the Commission to afford respondent an opportunity for oral argument upon its petition for reconsideration of Coastal Plains' application; together with its grounding of that ruling in the even broader one that such an opportunity is an inherent element of procedural due process in all judicial or quasi-judicial, *i. e.,* administrative, determinations of questions of law, outside of such questions as may arise upon interlocutory matters involving stays *pendente lite,* temporary injunctions and the like.

That the scope of its decision might not be misunderstood, the court expressly stated: "A ruling upon a demurrer is obviously not interlocutory for if the demurrer is sustained the pleader's cause (or defense) is dismissed upon the merits . . . ."[7] Moreover, except as to the indicated interlocutory matters, the right of oral argument on questions of law ("as well as . . . those of fact" when raised) was said to be "not conditional upon the *ex parte* view of the tribunal as to whether there is a substantial question as to the sufficiency of the allegations of a complainant." 174 F. 2d at 240.

Accordingly, although it was urged both by the Commission and by WJR to consider and determine the "threshold" question of law upon its merits, namely, whether the Commission's decision in denying WJR's petition was wrong, the court refused to consider or decide that question. In its view the question of the Commission's duty to accord a hearing, "*i. e.,* to hear argument

---

[7] The statement, taken in its context and the pervading sense of the opinion, related not merely to judicial rulings technically "raised by demurrer" but also to judicial and administrative rulings "as if on demurrer," *i. e.,* as expressly stated later in the opinion, to rulings "raised by demurrer or motion to dismiss or, in an administrative proceeding, by some less formally named instrument of like purpose, or by the tribunal's *sua sponte* treatment of a petition as if under demurrer . . . ." 174 F. 2d at 236.

before deciding whether the allegations of WJR's petition were sufficient" in law, was "a procedural question quite separate from the question on the merits whether or not the allegations of the petition, assuming their truth, were sufficient." 174 F. 2d at 240. The statutory scheme of the Communications Act, the court thought, "contemplates, before review in this court, proper exercise of the Commission's primary jurisdiction, *i. e.,* valid first instance hearings properly conducted from the procedural—due process—standpoint." *Ibid.* Accordingly, the majority felt that the court "must therefore remand the case with directions to the Commission to allow a hearing to WJR. Then if after hearing the Commission decides that the allegations were insufficient and dismisses the petition . . . an appeal to this court will bring properly before us the question of the correctness of the Commission's decision on the merits . . . ." *Ibid.*[8]

## I.

Taken at its literal and explicit import, the Court's broad constitutional ruling cannot be sustained. So taken, it would require oral argument upon every ques-

---

[8] Both from the wording of the immediate reference, quoted above, and from other language in context, it is clear that the court's reference to "the statutory scheme set up in the Communications Act" was not designed as a ruling that the statutory scheme itself, considered wholly as such and apart from any requirement of due process, affords the right of oral argument upon all questions of law, other than the interlocutory exceptions, before the Commission. Rather, the reference was intended to construe the Act as incorporating the court's reiterated conception of due-process requirements in this respect, in effect as a construction required by the Fifth Amendment. It is clear also that in this ruling the court identified "hearing" with "oral argument" insofar as determination of questions of law are concerned. We are thus confronted, so far as the court's decision went, with no question purely of statutory construction but solely, at bottom, with one of constitutional import and effect.

tion of law, apart from the excluded interlocutory matters, arising in administrative proceedings of every sort. This would be regardless of whether the legal question were substantial or insubstantial; of the substantive nature of the asserted right or interest involved; of whether Congress had provided a procedure, relating to the particular interest, requiring oral argument or allowing it to be dispensed with; and regardless of the fact that full opportunity for judicial review may be available.

We do not stop to consider the effects of such a ruling, if accepted, upon the work of the vast and varied administrative as well as judicial tribunals of the federal system and the equally numerous and diversified interests affected by their functioning; or indeed upon the many and different types of administrative and judicial procedures which Congress has provided for dealing adjudicatively with such interests. It is enough to say that due process of law, as conceived by the Fifth Amendment, has never been cast in so rigid and all-inclusive confinement.

On the contrary, due process of law has never been a term of fixed and invariable content.[9] This is as true with reference to oral argument as with respect to other elements of procedural due process. For this Court has held in some situations that such argument is essential to a fair hearing, *Londoner* v. *Denver,* 210 U. S. 373, in

---

[9] "The Fifth Amendment guarantees no particular form of procedure; it protects substantial rights." *Labor Board* v. *Mackay Co.,* 304 U. S. 333, 351. "The requirements imposed by that guaranty [Fifth Amendment due process] are not technical, nor is any particular form of procedure necessary." *Inland Empire Council* v. *Millis,* 325 U. S. 697, 710. See also *Bowles* v. *Willingham,* 321 U. S. 503, 519–521; *Opp Cotton Mills* v. *Administrator,* 312 U. S. 126, 152–153; *Buttfield* v. *Stranahan,* 192 U. S. 470, 496–497; *Anniston Mfg. Co.* v. *Davis,* 301 U. S. 337, 342, 343; *United States* v. *Ju Toy,* 198 U. S. 253, 263; *Chicago, B. & Q. R. Co.* v. *Chicago,* 166 U. S. 226, 235; *Phillips* v. *Commissioner,* 283 U. S. 589, 596–597.

others that argument submitted in writing is sufficient. *Morgan* v. *United States,* 298 U. S. 468, 481. See also *Johnson & Wimsatt* v. *Hazen,* 69 App. D. C. 151; *Mitchell* v. *Reichelderfer,* 61 App. D. C. 50.

The decisions cited are sufficient to show that the broad generalization made by the Court of Appeals is not the law. Rather it is in conflict with this Court's rulings, in effect, that the right of oral argument as a matter of procedural due process varies from case to case in accordance with differing circumstances, as do other procedural regulations. Certainly the Constitution does not require oral argument in all cases where only insubstantial or frivolous questions of law, or indeed even substantial ones, are raised. Equally certainly it has left wide discretion to Congress in creating the procedures to be followed in both administrative and judicial proceedings, as well as in their conjunction.

Without in any sense discounting the value of oral argument wherever it may be appropriate or, by virtue of the particular circumstances, constitutionally required, we cannot accept the broad formula upon which the Court of Appeals rested its ruling. To do so would do violence not only to our own former decisions but also, we think, to the constitutional power of Congress to devise differing administrative and legal procedures appropriate for the disposition of issues affecting interests widely varying in kind.[10]

---

[10] For example, what may be appropriate or constitutionally required by way of procedure, including opportunity for oral argument, in protection of an alien's claims of right to enter the country, cf. *Johnson* v. *Shaughnessy,* 336 U. S. 806, may be very different from what is required to determine an alleged citizen's right of entry or reentry, cf. *Ng Fung Ho* v. *White,* 259 U. S. 276, 282; *Carmichael* v. *Delaney,* 170 F. 2d 239, 243–244; a claimed right of naturalization, *Tutun* v. *United States,* 270 U. S. 568, 576–578; a claim of just compensation for land condemned, cf. *Roberts* v. *New York City,* 295 U. S. 264, 277–278; or the right to defend against an indictment for crime.

It follows also that we should not undertake in this case to generalize more broadly than the particular circumstances require upon when and under what circumstances procedural due process may require oral argument. That is not a matter, under our decisions, for broadside generalization and indiscriminate application. It is rather one for case-to-case determination, through which alone account may be taken of differences in the particular interests affected, circumstances involved, and procedures prescribed by Congress for dealing with them. Only thus may the judgment of Congress, expressed pursuant to its power under the Constitution to devise both judicial and administrative procedures, be taken into account. Any other approach would be, in these respects, highly abstract, indeed largely in a vacuum.

## II.

Descending to the concrete setting of this case in the provisions of the Communications Act,[11] we are unable to conclude that the procedure Congress has provided for determination of the questions respondent raises affords any semblance of due process deficiency.

The statute itself provides in terms for oral argument before the Commission in a single situation only, namely, in proceedings heard initially before an examiner under § 409 (a).[12] That provision however has no pertinence to this case, since it was not heard or assigned for hearing in the first instance before an examiner and respondent's claimed right of participation arises under § 312 (b). 47 U. S. C. § 312 (b). That section authorizes the Commission to modify station licenses "if in the judgment

---

[11] Act of June 19, 1934, c. 652, 48 Stat. 1064, 1081, 47 U. S. C. § 301 ff.

[12] The section reads in part: "In all cases heard by an examiner the Commission shall hear oral arguments . . . ." 47 U. S. C. § 409 (a).

of the Commission such action will promote the public interest, convenience, and necessity," but provides "That no such order of modification shall become final until the holder of such outstanding license . . . shall have been notified in writing of the proposed action and the grounds or reasons therefor and shall have been given reasonable opportunity to show cause why such an order of modification should not issue."

As bearing on the meaning of § 312 (b), account must be taken also of two other factors. One is § 4 (j) of the Act [47 U. S. C. § 154 (j)], which provides: "The Commission may conduct its proceedings in such manner as will best conduce to the proper dispatch of business and to the ends of justice. . . . Any party may appear before the Commission and be heard in person or by attorney. . . ." The other factor consists in this Court's decision in *Federal Communications Commission* v. *National Broadcasting Co.*, 319 U. S. 239, the so-called *KOA* case.

That case held that the granting of a license to broadcast on a frequency and at a strength which would interfere with the broadcast signal of a prior licensee within the protection of the latter's license as afforded by the Commission's existing rules constitutes an indirect modification of the prior outstanding license. From this it was held to follow that § 312 (b) gave the prior licensee the right to be made a party to the proceeding and hence to "have notice in writing of the proposed action and the grounds therefor and . . . a reasonable opportunity to show cause why an order of modification should not issue." 319 U. S. at 245–246. Then followed the Court's conclusion that by virtue of KOA's right to be a party, it had also the right under § 402 (b) (2), as a "person aggrieved or whose interests are adversely affected," to appeal to the Court of Appeals from the Commission's

denial of its petition to intervene and participate as a party in the proceedings before it.

It is in this context of statutory provisions and judicial decision that, WJR's claim of right to participate in the Commission's proceedings, including the right of oral argument, and of denial of due process through the denial of its petition for reconsideration arises and must be considered.

WJR's petition presents the question whether upon its face it states facts sufficient to show (indirect) modification of its license by the granting of Coastal Plains' application. This in turn depends on whether allegations not asserting interference within the 100 microvolt-per-meter contour or, as the Commission held, allegations asserting interference only "outside the normally protected contour" of WJR's license, set forth any legally sufficient basis for a claim of right to be made a party and participate in the proceedings. And, again, according to respondent, the answer to that question turns on whether the Commission's Standards of Good Engineering Practice Concerning Standard Broadcast Stations constitute a part of and a limitation upon WJR's license.[13]

Respondent insists that those Standards, as a matter of law, do not limit its license or measure the protection it affords against "objectionable interference"; it necessarily argues in addition that the degree of interference its petition alleges brings about an (indirect) modification of its license (conversely stated, that the license protected it against the alleged degree of interference) and hence, as in the KOA case, the proposed grant of

---

[13] The Standards, 4 Fed. Reg. 2862, expressly state that "during daytime the Class I station is protected to the 100 uv/m ground wave contour." § 1 (2) (a). The Commission's Standards of Good Engineering Practice Concerning Standard Broadcast Stations were adopted in 1939 after formal and informal hearings. Fifth Annual Report of the Federal Communications Commission (1940) 37.

a new license entitles it under § 312 (b) to be made a party to the Coastal Plains proceeding and to participate in it as § 312 (b) provides.

This is the claim which the Court of Appeals purported expressly to refuse to consider or decide, prior to oral argument upon it before the Commission. But two things may be noted. One is that, contrary to the situation here, in the *KOA* case the Commission's proposed grant of a new license to Station WHDH concededly created interference against which the existing rules of the Commission protected the prior license of KOA.[14]

In the second place, the majority's disclaimer here of decision upon the merits seems hardly consistent with its opinion's flat ruling, as we understand it, that WJR's allegations qualified it as a party to the proceeding and not, as the dissenting judges thought, merely as a stranger seeking to come in as an intervenor.[15] For that question here, *viz.*, whether WJR's allegations entitle it to standing as a party, is but another way of phrasing the issue

---

[14] In other words, the interference alleged was *within* the conceded "normal contours" of KOA's protection, not without them. There was therefore no question such as is presented here whether the existing station's license protected it against the interference alleged. The *KOA* decision therefore cannot be taken as ruling that one asserting interference outside the scope of its license protection, afforded by the Commission's rules and regulations, is entitled to be made a party and to participate in proceedings involving the issuance of a new license creating only such interference.

[15] The court's opinion stated: "WJR as an outstanding licensee is not a mere permissive intervener or, as the minority puts it, an 'outsider'." 174 F. 2d at 240. The statement of the minority to which this rejoinder was made was: "The ruling [of the majority] is that a petitioner for intervention in an administrative proceeding is entitled to an oral hearing as a matter of constitutional right, no matter what or how little he says in his petition. . . . [WJR's petition] was basically a petition to intervene, as it asked that WJR be made a party to the Coastal Plains proceeding." *Id.* at 243.

whether its petition states a legally sufficient claim of (indirect) modification, since under § 312 (b) only a prior licensee who states such a claim is entitled to be made a party and to participate in the proceedings. To decide that one has the status of a party is therefore to decide the question of modification *vel non*.

In view of the court's mandate, however, we think we must accept its disclaimer. But we also think that, in the light of the disclaimer, its ruling, if it was such, that WJR is entitled to be made a party must be rejected and that question must be regarded as inherently involved in, indeed as identical with, the undetermined issue of modification *vel non*, if any effect is to be given to the provisions of § 312 (b).[16]

We think the limitations of that section must be given effect. Indeed it is our view that the Act's procedural scheme and its application in this case have not deprived the respondent of any procedural right guaranteed by the due-process requirement of the Fifth Amendment. That is true notwithstanding the Commission's failure to afford respondent an opportunity for oral argument upon its allegations in this case.

Congress, we think, has committed to the Commission's discretion, by the terms of § 312 (b) and § 4 (j) of the Communications Act, the questions whether and under what circumstances it will allow or require oral argument, except where the Act itself expressly requires it.

---

[16] The Court of Appeals was not simply construing the statute, but was influenced throughout its opinion by its broad constitutional generalization concerning oral argument. In that view necessarily the Act's specific terms, including those of § 312 (b), sank into the generalization's constitutional coloring. In that light, perhaps, the majority's disclaimer and its ruling that WJR was entitled to come in as a party bore semblance of consistency. But without the coloration, § 312 (b) identifies showing of modification with standing as a party; and, unless this limitation is invalid for constitutional reasons, it must be given effect.

As we have noted, Congress has required oral argument expressly in proceedings heard initially before an examiner under § 409 (a). But no such requirement was made by § 312 (b). While that section requires notice and statement of grounds for any proposed order of modification before such order "shall become final," it does not specify that further proceedings shall include the right to oral argument; it requires only that the holder of the outstanding license to be modified "shall have been given reasonable opportunity to show cause why such an order of modification should not issue" before the order becomes final.

In view of the contrast between this language and that of § 409 (a), it is hardly to be taken that Congress intended the "reasonable opportunity to show cause" always to include opportunity for oral argument. Indeed, in the absence of any such explicit requirement as that of § 409 (a), the terms of § 312 (b) must be read in the light of the Act's general procedural authorization in § 4 (j), which empowers the Commission to "conduct its proceedings in such manner as will best conduce to the proper dispatch of business and to the ends of justice."

In this wording Congress was mindful not only of the ends of justice but also of the proper dispatch of the Commission's business, a matter not unrelated to achieving the ends of justice, and left largely to its judgment the determination of the manner of conducting its business which would most fairly and reasonably accommodate those ends. Moreover it was dealing with substantive interests involving the use, pursuant to federal license, of channels of radio communication "but not the ownership thereof," § 301, as to which moreover the Act expressly provides that "no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license." *Ibid.*

In this connection it cannot be recalled too often that " 'public convenience, interest, or necessity' was the touchstone for the exercise of the Commission's authority" in matters relating to construction permits and licensing, and that this criterion "serves as a supple instrument for the exercise of discretion by the expert body which Congress has charged to carry out its legislative policy." *Federal Communications Commission* v. *Pottsville Broadcasting Co.*, 309 U. S. 134, 137–138. "Necessarily, therefore, the subordinate questions of procedure in ascertaining the public interest, when the Commission's licensing authority is invoked—the scope of the inquiry, whether applications should be heard contemporaneously or successively, whether parties should be allowed to intervene in one another's proceedings, and similar questions—were explicitly and by implication left to the Commission's own devising, so long, of course, as it observes the basic requirements designed for the protection of private as well as public interest." *Id.* at 138.

We need not go again over the ground which was covered by this decision and others. Suffice it to say that the Commission has not seen fit to provide for oral argument in all such cases as this arising under § 312 (b); nor is there any basis in the section or the Act for believing that Congress intended to require it to do so. "Reasonable opportunity to show cause," as used in § 312 (b), comprehends, in the light of § 4 (j) and this Court's prior decisions, that the Commission shall have broad discretion in determining whether and when oral argument shall be required or permitted, as it does with respect to other procedural matters.[17]

---

[17] That is true even though § 4 (j) also provides that "Any party may appear before the Commission and be heard in person or by attorney." That provision does not nullify the Commission's discretion as to the manner in which the "reasonable opportunity to

Respondent does not contend that it was denied any opportunity to present for the Commission's consideration any matter of fact or law in connection with its application or that the Commission has not given all matters submitted by it due and full consideration. We cannot say, in view of the statute and of the subject matter involved, that the Commission abused its discretion in hearing respondent's application on the written submission.[18]

Accordingly we think it was error for the court to decline to decide the merits of the question whether respondent's application stated a legally sufficient case of (indirect) modification of its license within the terms of § 312 (b) as well as to decide, without determining that question, that respondent was entitled to be made a party to and participate as such in the Coastal Plains proceeding. As we have said, in the situation here presented, the two forms of statement pose the same question in substance, together with the further question, under the *KOA* decision, whether respondent has standing to appeal as a party aggrieved. The statutory sequence identifies (1) a legally sufficient claim of modification with (2) right to standing as a party and (3) right to appeal.

show cause" afforded by § 312 (b) shall be given. It only assures the right to participate "in person or by attorney" in the manner reasonably found by the Commission to be appropriate.

[18] Federal Rule 78, the terms of which were noted by the dissent in the Court of Appeals, 174 F. 2d 226, 247, provides in part, as to United States District Courts: "To expedite its business, the court may make provision by rule or order for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition." Fed. Rules Civ. Proc., Rule 78. Similar notice may be taken of Rule 7 (2) of this Court which, governing not only motion practice in appellate cases but motions for leave to initiate original proceedings, provides in part: "Oral argument will not be heard on any motion unless the court specially assigns it therefor . . . ."

This threefold issue presents a question of law respondent is entitled to have determined. The dissenting judges in the Court of Appeals considered the question insubstantial, because they thought, contrary to respondent's position, that the Commission's Standards of Good Engineering Practice applied as a limitation upon respondent's license and therefore excluded it from protection against interference such as respondent alleged, *i. e.*, outside the contours prescribed by the Standards.

That question, being one of law, might now be decided here. But since the statute, if it affords respondent a right of appeal, provides that it shall be to the Court of Appeals, and since that court has not decided the basic issue on the merits, we think the cause should be remanded to the Court of Appeals for decision of that question, uncomplicated by questions of constitutionality relating to the Commission's procedure. Accordingly the court's decision is reversed and the cause is remanded to it for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.