**RADIO CINCINNATI, Inc. v. FEDERAL COMMUNICATIONS COMMISSION (WJIM, Inc., Intervenor).**

**No. 9980.**

United States Court of Appeals District of Columbia Circuit.

Argued April 12, 1949.

Decided Sept. 8, 1949.

Mr. Geo. O. Sutton, Washington, D. C., with whom Messrs. William Thomson, and John H. Midlen, Washington, D. C., were on the brief, for appellant.

Mr. Richard A. Solomon, Washington, D. C., with whom Messrs. Benedict P. Cottone, General Counsel, Max Goldman, Assistant General Counsel, Washington, D. C. and Robert D. Greenburg, Washington, D. C., Counsel, Federal Communications Commission, were on the brief, for appellee. Mr. Dee W. Pincock, Washington, D. C., Attorney, also entered an appearance for appellee.

Mr. Peter Shuebruk, New York City, with whom Mr. James Lawrence Fly, New York City, was on the brief, for intervenor, urging affirmance.

Before CLARK and PROCTOR, Circuit Judges and Arthur F. Lederle, District Judge, sitting by designation.

CLARK, Circuit Judge.

Appellant, Radio Cincinnati, Inc., is licensee of Station WKRC,[1] one of five full-time standard broadcast stations in Cincinnati, Ohio. WJIM, Inc., intervenor herein, is licensee of Station WJIM,[1] the only fulltime standard broadcast station in Lansing, Michigan.[2]

On October 11, 1945, WJIM filed with the appellee Commission its application for change of frequency and power from 1240 kc with 250 watts power, unlimited time, to 550 kc with 1 KW power, unlimited time, using a directional antenna, day and night. Approximately four months later, on February 8, 1946, WKRC, then operating on 550 kc, filed an application for a construction permit with the Commission. That application sought to increase WKRC's power from 1 KW night, 5 KW day, unlimited time, using a directional antenna day and night, to 5 KW, day and night, unlimited time, using a directional antenna, and to change the transmitter site to a point 7¼ miles away from its present site. These two applications were designated for consolidated hearing along with nine others for the use of the 550 kc frequency and the consolidated hearing was held during April and June of 1946 before a Commission examiner.

On December 6, 1946, the Commission adopted a Decision and Order which, among other things, (1) granted the application of WJIM, and (2) conditionally granted the application of WKRC, the condition being that WKRC file within 60 days an application proposing to radiate no more than 175 mv/m at night toward Lansing, Michigan, thereby affording what the Commission deems to be adequate protection to WJIM.

Since WKRC was dissatisfied with the RSS limitation imposed as well as with the Commission's failure to adopt a proposed decision prior to its Decision and Order of December 6, 1946, it petitioned for a rehearing, seeking to set aside that Decision and Order. On April 25, 1947, the Commission released the following two documents: (1) a Memorandum Opinion and Order which severed the applications of WJIM and of WKRC from the consolidated proceeding and granted leave to file exceptions and request oral argument on the relative merits of those two applicants; and (2) a Proposed Decision which looked toward the grant of the application of WJIM and the conditional grant[3] of that of WKRC. Exceptions to the Proposed Decision were promptly filed and, after several procedural steps not important here, a further full hearing was had with WKRC arguing its exceptions before the Commission.

On November 18, 1947, the Commission released its final Decision[4] which granted the application of WJIM and denied the application of WKRC "without prejudice to applicant's filing within 60 days an application for use of the frequency 550 kc at Cincinnati which would afford protection in accordance with the Standards to all existing and proposed stations except that it may radiate 175 mv/m equivalent for a .311 wavelength antenna in the horizontal plane in the direction of Lansing, Michigan." It is apparent from the record that in reaching this decision the Commission was guided by two major considerations. First, if the application of WKRC were granted unconditionally, WKRC's nighttime radiation would impose what the Commission regarded as an excessive limitation on the operation of WJIM as proposed. Second, a fair, efficient, and equitable distribution of radio service required the granting of WJIM's application.

WKRC again petitioned for reconsideration and rehearing and the Commission by Memorandum Opinion and Order dated July 22, 1948, denied that petition. This

---

1. For convenience we shall hereafter refer to the parties by the call letters of the station which they operate.

2. This opinion speaks perforce as of the time the record before us was compiled and cannot take into consideration conditions which may have changed since the decision of the Commission below.

3. The condition imposed upon the grant to WKRC was the same as that formerly imposed by the Commission's Decision and Order of December 6, 1946.

4. The decision was dated October 29, 1947.

appeal followed with WKRC seeking in this court a stay of the effectiveness of the Commission's final Decision. We denied that stay by order of January 24, 1949.

The statutory mandate which governs generally the functions of the Commission in the licensing and allocation of broadcast facilities is as follows:

"In considering applications for licenses, and modifications and renewals thereof, when and insofar as there is demand for the same, the Commission shall make such distribution of licenses, frequencies, hours of operation, and of power among the several States and communities as to provide a fair, efficient, and equitable distribution of radio service to each of the same."[5]

■ It should be noted at the outset that this case does *not* involve the problem of choosing which of two competing applicants is the better qualified to serve the public interest. The problem of which, as between WKRC and WJIM, of the two broadcast companies has the better staff or the better financial resources or the better programming never required decision by the Commission in this case.[6] Rather, it is conceded by all in this case that both WKRC and WJIM were and are fully qualified to perform the services which they proposed to perform in their respective applications and that their equipment, with the exception of directive antenna, would comply with the Commission's Standards of Good Engineering Practice.[7] The problem confronting the Commission in reaching

the decision from which this appeal was taken was basically one of proper distribution and allocation of facilities as required in the public interest. We believe that the Commission achieved a completely correct solution of the problem in this case as will be seen below.

■ Having severed the applications of WKRC and WJIM from the larger consolidated proceeding,[8] the Commission set the two down for a comparative hearing. Since the two applications were mutually exclusive,[9] this comparative hearing was required by the now-familiar doctrine of the Ashbacker case.[10] WKRC took full advantage of the opportunity provided by the comparative hearing to fully argue its exceptions to the Commission's Proposed Decision of April 25, 1947.

The ultimate issue resolved by the Commission's decisions from which this appeal was taken was basically a geographical one, namely, whether public need for standard broadcast facilities would be better satisfied by a grant to the Lansing station or to the Cincinnati station. That the resolution of this problem in favor of WJIM was entirely reasonable and fair as well as legally sound is forcefully demonstrated by the following facts which lie beyond dispute upon the record in this case. Both WJIM and WKRC are licensees of presently operating standard (AM) broadcast stations. Both have network affiliations.[11] WKRC is a regional[12] station. WJIM is local[12] one. WKRC seeks an

5. Section 307 (b) of the Communications Act of 1934, 48 Stat. 1084, as amended by 49 Stat. 1475 (1936), 47 U.S.C.A. § 307 (b).

6. Cf. Johnston Broadcasting Co. v. Federal Communications Commission, —— U.S. App.D.C. ——, 175 F.2d 351; Kentucky Broadcasting Corp. v. Federal Communications Commission, 84 U.S.App. D.C. 383, 174 F.2d 38.

7. In fact, counsel for both parties so stipulated at the hearing before the Commission.

8. No party to this appeal challenges in any way the validity of that severance.

9. That is, they both could not have been granted as proposed because of the objectionable interference (as defined by the Standards) which would have resulted.

10. In Ashbacker Radio Corp. v. Federal Communications Commission, 1945, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108, it was held that the grant of one of two mutually exclusive applications without a hearing to both deprived the other of an opportunity to be heard given him by statute.

11. WKRC is an affiliate of the Columbia Broadcasting System (CBS), while WJIM is affiliated with the American Broadcasting Company (ABC) and the so-called "Michigan Network."

12. The Commission's Rules and Regulations establish three classes of standard broadcast channels, namely, clear (for the use of high-powered stations), regional (for the use of medium-powered stations), and local (for the use of low-powered stations). Section 3.21 of the

increase in its nighttime power and a change of its transmitter site. WJIM seeks a change of frequency and an increase in power. There are *five fulltime* stations operating in Cincinnati. They include two clear channel, two regional and one local.[13] There is only one fulltime station operating in Lansing, the capital of the State of Michigan, and that one is WJIM operating as a local, 250-watt station. Cincinnati has a population of 455,610, and the Cincinnati metropolitan district a population of 789,309. Lansing has a population of 78,753, and the metropolitan district a population of 110,356.[14]

The record discloses that the proposed operation of WKRC would result in the increase over its present coverage of 11,000 square miles and 861,711 persons by day and an increase of 8,966 square miles and 631,852 persons at night. These figures compare favorably with the same figures for WJIM since WJIM's proposed coverage would result in an increase of only 6,810 square miles and 220,000 persons by day and 423 square miles and 22,300 persons at night. However, of vital significance is the conceded fact that the proposed additional coverage by WKRC would reach no area or person not already served by some radio station, whereas the proposal of WJIM would serve 5,000 persons in an area of 550 square miles who are now without any primary broadcast service during the daylight hours. It was upon this evidence that the Commission based its conclusion that the mandate of Section 307(b), supra, required the granting of the application of WJIM. We think that this conclusion was irresistible. We therefore endorse and adopt the language of the Commission when, in its final Decision, it said:

"In our opinion as between these applications, a fair, efficient, and equitable distribution of radio service can be fulfilled only by granting the application of WJIM * * * so that the 5,000 persons who

have no primary daytime radio service at all may enjoy the benefits of this medium of mass communications from at least one station. The fact that many more persons, who now receive one or more primary services, would receive an additional service if the application of * * * WKRC * * * should be granted is, we think, insufficient to prevail against the more acute need of a smaller but substantial number of persons."

■ This opinion could well end at this point were it not for our desire to comment briefly on some of the points raised by WKRC on appeal. It will be remembered that the Commission, in granting the application of WJIM, went further and, in seeking to provide a means for the possible improvement of the facilities of WKRC, denied the latter's application without prejudice to its filing another application containing a limitation on its radiation toward WJIM of 175 mv/m. There is no doubt in the mind of this court that the Commission, on the basis of this record, could have denied WKRC's application completely and *with* prejudice. The Commission's denial without prejudice was, therefore, in the nature of a gratuity offered WKRC. It was a suggestion and nothing more. It carried with it no obligation to act pursuant to it and it did not alter the present operation or status of WKRC in any respect. WKRC is thus in the ridiculous position of strenuously complaining about, and directing the bulk of its attack on this appeal against, an action of the Commission which was obviously designed to help it. It is true, as WKRC now urges and as was stated by the single dissenting Commissioner, that there is no substantial evidence in this record which offers light as to the effect of the proposed operation by WKRC with the suggested limitation of 175 mv/m toward Lansing. However, this cannot be used to buttress WKRC's otherwise frivolous due process argument. WKRC asserts that it was de-

Rules and Regulations, 1 Pike & Fischer R. R. § 53:21. See also 1 (Part Two) Pike & Fischer R. R. § 81:2.

13. They are WLW (50 KW), WCKY (50 KW), WSAI (5 KW), WKRC, and WCPO (250 watts).

14. All population figures were taken, by agreement of counsel, from the last official United States Census in 1940.

nied a full and fair hearing on what was in effect a proposal to modify its existing license. The simple answer to this is that there has been, in fact, no modification of or proposal to modify WKRC's *existing license*. What was done constituted no more than a proposal to modify or moderate *the new operations* which WKRC by its application sought. We are aware of no rule of law which requires the Commission to grant a full hearing such as WKRC demands when the Commission makes a mere suggestion, advisory in nature, that an *application* be amended or revised. In any event, we fail to see how WKRC is a party aggrieved by that portion of the final decision which denied without prejudice the application of WKRC.[15]

Assuming, without deciding, that the Commission was in error in making findings relative to the 175 mv/m limitation, that error in no way affects the end result in this case since there was ample undisputed record evidence to support the decision of the Commission preferring WJIM in the comparative consideration given.

Finally, WKRC raises numerous other technical points, including an assertion of lack of quorum to act upon the petition for rehearing. We see no merit in any of these contentions. In summary, the Commission in this case, as shown by the record, has proven itself eminently fair and diligently conscientious in carrying out the duties required of it by Section 307(b) of the Act.

Affirmed.

15. In fact, counsel for WKRC, during oral argument to this court, conceded that if WKRC's application had been denied *with* prejudice then WKRC could not complain that it was not given a proper hearing.