**WESTERN AIR LINES, Inc., v. CIVIL AERONAUTICS BOARD.**

No. 12,635.

United States Court of Appeals
Ninth Circuit.

Sept. 28, 1950.

546

---

Hugh W. Darling, George G. Gute, Los Angeles, Cal. (Guthrie, Darling & Shattuck, Los Angeles, Cal., of counsel),˙ for petitioner.

Herbert A. Bergson, Asst. Atty. Gen., John H. Wanner, Associate General Counsel, Civil Aeronautics Board, J. Roger Wollenberg, Attorney, Dept. of Justice, Joseph B. Goldman, Chief Certificate & Permits Div. C. A. B., all of Washington, D. C., for respondent.

G. Robert Henry, Washington, D. C., Sheldon G. Cooper, San Francisco, Cal., for Intervenors, Southwest Airways Co. and West Coast Airlines.

Before STEPHENS, 'Circuit Judge, and BOWEN, Chief Judge, and LEMMON, District Judges.

STEPHENS, Circuit Judge.

The Civil Aeronautics Board, respondent, has pending before it certain matters which it had heretofore set for hearings at different times. Petitioner here, Western Air Lines, Inc., petitioned the Board to consolidate them into one hearing, and the Board denied the petition.[1]

We are asked to review the Board's order˙ denying consolidation and to stay all administrative proceedings in such matters pending this court's order on review.[2] We ordered the Board to show cause why the stay order should not issue. The Board opposes the stay of its hearings on the ground that a good cause therefor is not alleged in the petition. Southwest Airways Company and West Coast Air Lines, Inc., are interveners and oppose the stay on the same ground.

At a hearing before this court upon the application for the stay order, the parties filed written statements, full oral argument was had, and permission was granted to file, and they have filed, further statements. Upon suggestion of the court the Board has postponed hearings scheduled for August 21, 28, and 30, 1950, pending decision on the stay application.

The basic question is whether, taking the

---

1. Three members constituting a quorum of the five-member board (Chairman O'Connell and Members Lee and Ryan) acted upon the petition for consolidation, all voting to deny it. A petition for reconsideration was acted upon by four members, Chairman O'Connell having resigned. Acting Chairman Ryan and Member Lee voted against reconsideration, and Members Jones and Adams voted for reconsideration and made a statement that in their judgment all of the cases should be consolidated. We are concerned in this case not with the merits of the various matters sought to be consolidated but with whether the Board accorded due process in the procedure adopted. That is: Do the facts alleged in the petition taken as true constitute a legal right which was denied petitioner? Therefore, we do not further concern ourselves with the equal division on the petition for reconsideration. Compare American Broadcasting Co. v. Federal Communications Commission, D.C.Cir., 1949, 179 F.2d 437, 442.

2. Congress provided for the judicial review of orders issued by the Civil Aeronautics Board in Section 1006 of the Civil Aeronautics Act of 1938, 49 U.S.C.A. § 646. We quote the pertinent portions thereof:

"(a) Any order, affirmative or negative, issued by the Board under this chapter * * * shall be subject to review by the circuit courts of appeals of the United States * * * upon petition * * * by any person disclosing a substantial interest in such order. * * *
* * * * * *

"(d) Upon transmittal of the petition to the Board, the court shall have exclusive jurisdiction to affirm, modify, or set aside the order complained of, in whole or in part, and if need be, to order further proceedings by the Board. Upon good cause shown, interlocutory relief may be granted by stay of the order or by such mandatory or other relief as may be appropriate. * * *"

petition as correctly stating the case, petitioner has been denied a legal right.

Western Air Lines, Inc., is a trunkline or long-haul type of operating domestic air carrier. Southwest Airways Company and West Coast Air Lines, Inc., are representative of the local feeder or short-haul, non-trunkline type of operating domestic air carrier. (For sake of brevity we refer herein to these companies as "Western", "Southwest", and "West Coast", respectively.)

In the post-World War II development of commercial aviation the government through the Civil Aeronautics Board has sponsored, directed, and supervised a vast experiment in the exploitation of short-haul air transportation throughout the nation by means of the grant to independent non-trunkline carriers of temporary certificates of public convenience and necessity. South-

west was certificated in 1946 to operate for a term of three years expiring November 22, 1949, local feeder route No. 76 extending from Los Angeles, California, to Medford, Oregon. West Coast was certificated to operate for an identical period local feeder route No. 77 extending from Medford, Oregon, to Bellingham, Washington. See West Coast Case, 6 C.A.B. 961 (1946). Two of the matters with which we are here concerned concern the renewal [3] of such route authorizations (Docket Nos. 3718 et al.[4] and 3966 et al.[5])

In all, Western asked the Board to consolidate for hearing and disposition seven cases, pending before the Board at various stages of the administrative process. The Board has decided none of these cases. They concern five route authorizations (we have mentioned two above; the others are Docket Nos. 2019 et al.,[6] 4447,[7] and 4448 [8]), the

3. We note that the temporary certificates of Southwest and West Coast continue in effect until final disposition of the matter of renewal by reason of compliance with Section 9(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1008(b).

4. The Southwest Renewal-United Suspension Case (Docket No. 3718 et al.) was instituted by Board order on April 4, 1949, wherein the Board disclosed its tentative conclusion to renew for five years Southwest's temporary certificate for route No. 76 and ordered United Air Lines, Inc., to show cause why it should not be suspended and Southwest substituted at two intermediate points so as to eliminate uneconomic competition. As of the date on which Western filed its petition for consolidation, to-wit, May 2, 1950, a prehearing conference had been held, exhibits had been exchanged, the matter had been heard, briefs to the examiner had been submitted and the examiner had issued his report.

5. The West Coast Renewal-United Suspension Case (Docket No. 3966 et al.) was instituted by Board order on June 29, 1949, wherein the Board disclosed its tentative conclusion to renew for five years West Coast's temporary certificate for route No. 77 (except for one segment thereof) and ordered United Air Lines, Inc., to show cause why it should not be suspended and West Coast substituted at one intermediate point so as to eliminate uneconomic competition. As of the date of Western's petition for consolidation,

May 2, 1950, a prehearing conference had been held, exhibits had been exchanged, and a hearing before the examiner had substantially been completed.

6. The Board on June 15, 1949, promulgated its decision in an "area" proceeding entitled the Additional California-Nevada Service Case (Docket No. 2019 et al.) which it had instituted by order dated July 11, 1947, wherein various applications for additional trunkline and feeder service in California and Nevada were consolidated. Prior to the date of Western's petition for consolidation, May 2, 1950, the Board had reopened Docket No. 2019 et al. for further hearing with respect to Southwest's proposal for an extension of its local feeder route No. 76 south to San Diego, California, and Phoenix, Arizona, via certain intermediate points together with suspension issues involving Western and others. As of May 2, 1950, a prehearing conference had been held and the examiner had issued a prehearing conference report. Exhibits have subsequently been exchanged.

7. On May 2, 1950, Western applied for amendment of its certificate for route No. 63 requesting inclusion therein of authority to service substantially all of the points now serviced by Southwest and West Coast on local feeder routes No. 76 and 77. The matter was assigned Docket No. 4447.

8. On May 2, 1950, Western Air Lines of the Pacific, Inc., a newly formed subsid-

approval of a merger of air carriers (Docket No. 4405[9]) and the approval of the acquisition of a controlling stock interest by one air carrier in another (Docket No. 4449[10]). It is conceded that all seven matters are interrelated to a varying extent, and that cases Nos. 3718, et al., 3996 et al., 4447 and 4448 present mutually exclusive issues. In each, Western is either a party applicant or an intervener.

In its order denying consolidation, the Board found consolidation of Docket No. 2019 et al. "with Docket Nos. 3718 et al., 3966 et al., or 4405, would unduly expand the scope of the issues in each of said proceedings and unduly delay the disposition thereof; that deferral of said proceedings would unduly delay the disposition thereof" and "that consolidation of Docket Nos. 4447, 4448 and 4449 with Docket Nos. 3718 et al., and 3996 et al., or Docket No. 4405, would unduly expand the issues in such proceedings, unduly delay the disposition thereof, and is not conducive to the proper dispatch of the Board's business." It also found that Docket Nos. 3718 et al., 3996 et al., and 4405 were "in certain respects interrelated to such an extent that it may prove advantageous and consistent with orderly procedure for the Board to decide the three cases simultaneously." Docket No. 3718 et al. was ordered "reopened", and Docket No. 3996 et al. "reconvened", for further hearing with respect to "the effect, if any, upon the substitution-suspension is-sues in said proceedings [see footnotes 4 and 5 ante] of the proposed merger of Southwest and West Coast" and it was expressly found that "any delay in the disposition of the renewal proceedings that may result from the action herein taken will not prejudice the carries" [see footnote 3, ante].

Congress has provided that "any person disclosing a substantial interest in" "any order * * * issued by the Board" may petition for a review of such order. 49 U.S.C.A. § 646(a). Respondent Board and the interveners herein not too forcibly urge that the complained of order denying consolidation is an interlocutory order and not a final order of which we can take hold. We do not doubt but that this court lacks jurisdiction to review an interlocutory order of the Board. As the Supreme Court puts it, "administrative orders are not reviewable unless and until they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process." Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp., 1948, 333 U.S. 103, 112, 113, 68 S.Ct. 431, 437, 92 L.Ed. 586. Such, we believe, is the purport of requiring the petitioner to disclose a "substantial interest" in the challenged order.[11] The Federal Communications Commission v. WJR The Goodwill Station, Inc., 1949, 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353; Pan American Airways Co. v. Civil Aeronautics Board, 2 Cir., 1941, 121 F.2d 810; Seaboard & Western

iary of Western, applied for a certificate of public convenience and necessity to operate a local feeder route substantially identical to a combination of Southwest's route No. 76 and West Coast's route No. 77. The matter was assigned Docket No. 4448.

9. On April 10, 1950, Southwest and West Coast filed a joint application requesting approval by the Board of a proposed merger of such companies and the transfer to Southwest of West Coast's certificate for route No. 77. The matter was assigned Docket No. 4405, and entitled Southwest-West Coast Merger Case. As of the date of Western's petition for consolidation, May 2, 1950, a prehearing conference had been held. Subsequent thereto the examiner has issued a pre-hearing conference report and exhibits have been exchanged.

10. On May 2, 1950, Western petitioned for Board approval of its acquisition of the controlling stock interest in Western Air Lines of the Pacific, Inc. The matter has been assigned Docket No. 4449.

11. "Where Congress has authorized review of 'any order' or used other equally inclusive terms, courts have declined the opportunity to magnify their jurisdiction, by self-denying constructions which do not subject to judicial control orders which, from their nature, from the context of the Act, or from the relation of judicial power to the subject-matter, are inappropriate for review." Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp., 1948, 333 U.S. 103, 106, 68 S.Ct. 431, 433, 92 L.Ed. 568.

Airlines, Inc. v. Civil Aeronautics Board, D.C.Cir., 1949, 181 F.2d 777.

In effect, petitioner is asking us to superintend the manner in which the Board calls its business. It is the Board's duty under the Civil Aeronautics Act to ascertain, promote, and protect the public interest, as to which the Board is the "final arbiter". United Air Lines, Inc. v. Civil Aeronautics Board, 1946, 88 U.S.App.D.C. 89, 155 F.2d 169, 173. Private litigants before the Board are "primarily vindicating the public, not a private, interest." W. R. Grace & Co. v. Civil Aeronautics Board, 2 Cir., 1946, 154 F.2d 271, 287. It would be strange indeed if we were enabled to oversee the administrative docket. The Board is an informed body and must necessarily have the widest latitude in the matter of how it goes about determining the public interest in what it believes to be the proper dispatch of the business before it. "Necessarily, therefore, the subordinate questions of procedure in ascertaining the public interest, when the Commission's licensing authority is invoked—the scope of the inquiry, whether applications should be heard contemporaneously or successively, whether parties should be allowed to intervene in one another's proceedings, and similar questions —were explicitly and by implication left to the Commission's own devising, so long, of course, as it observes the basic requirements designed for the protection of private as well as public interest." Federal Communications Commission v. Pottsville Broadcasting Co., 1940, 309 U.S. 134, 138, 60 S.Ct. 437, 439, 84 L.Ed. 656. See, also, Federal Communications Commission v. WJR, The Goodwill Station, Inc., supra, 337 U.S. 272, 69 S.Ct. 1097.

Western, however, asserts that the Board's denial of consolidation in the circumstances here runs afoul of the rule announced by the Supreme Court in the case of Ashbacker Radio Corp. v. Federal Communications Commission, 1945, 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108. There, Fetzer Broadcasting Company filed an application for a permit to construct a broadcasting station. Before that application was acted upon, Ashbacker Radio Corporation filed a competing application. It was conceded by the Commission that the applications were for a facility which could be granted only to one. Notwithstanding the Commission granted the Fetzer application without hearing the Ashbacker application. On the same day it set the latter application for hearing. Congress had provided in the governing act that applicants were entitled to a hearing before their applications were denied. The Supreme Court held that even though "the Fetzer license, like any other license granted by the Commission, was subject to certain conditions which the Act imposes as a matter of law" and hence was not technically conclusive of the Ashbacker application, "the statutory right of petitioner to a hearing on its application * * * [which was] in form * * * preserved, * * * has as a practical matter been substantially nullified by the grant of the Fetzer application." The holding was epitomized in the following language: " * * * where two *bona fide* applications are mutually exclusive the grant of one without a hearing to both deprives the loser of the opportunity which Congress chose to give him." Ashbacker Radio Corp. v. Federal Communications Commission, supra, 326 U.S. 331, 333, 334, 66 S.Ct. 150.

We are called upon to interpret the Ashbacker ruling as requiring one hearing in a consolidated case where mutually exclusive matters are pending before an administrative agency. We find nothing in that case so holding, although on some occasions the rule of the case has been judicially stated as if it makes a consolidated, or, as sometimes expressed, a comparative hearing obligatory in such circumstances. See, e. g., Kentucky Broadcasting Corp. v. Federal Communications Commission, 1949, 84 U.S. App.D.C. 383, 174 F.2d 38, 42, and Radio Cincinnati v. Federal Communications Commission, D.C.Cir., 1949, 177 F.2d 92, 94. But, procedural due process of law "has never been a term of fixed and invariable content." Federal Communications Commission v. WJR, The Goodwill Station, Inc., supra, 337 U.S. 275, 69 S.Ct. 1103.

Here, Docket Nos. 2019 et al. (which concerns route authorization and

suspension issues in a region contiguous to that in which the other route proposals are laid), 4405 (which pertains to the proposed merger of Southwest and West Coast) and 4449 (which relates to Western's acquisition of the controlling stock interest in Western Air Lines of the Pacific, Inc.) are not cases which involve authorizations that are actually exclusive of any of the other proposals in question. Refusal to consolidate them with each other or with the others does not operate to foreclose Western as to any route covered by its application or that of its subsidiary. Moreover, the diverse issues inhering in merger and control cases give the Board a clear right, as is its practice, not to consolidate them with route cases.[12] If it is petitioner's thought that the Board abused its discretion by not ordering an area proceeding, we hold that such choice must be left to the sound judgment of the expert body.

However, the Board concedes that Docket Nos. 3718 et al., 3966 et al., 4447 and 4448 involve mutually exclusive feederline route authorizations for the reasons that the Board has not as yet duplicated, nor does it intend in the foreseeable future to duplicate, feederline routes. If the Board had acted finally in Docket Nos. 3718 et al., and 3966 et al., and renewed Southwest's and West Coast's certificates without having previously heard the applications of Western and Western Air Lines of the Pacific, Inc., and the latter had petitioned us to review the Board's order, we take it that an exact replica of the Ashbacker case would be before us. The Civil Aeronautics Act entitles every applicant for a certificate of public convenience and necessity to a public hearing. Section 401(c), 49 U.S.C.A. § 481(c). And, as we have seen, in the application of the Ashbacker rule it matters not that the Act imposes as a matter of law certain conditions upon every certificate which is issued, such as, the right of the Board "upon its own initiative" to "alter, amend, modify, or suspend any such certificate, in whole or in part, if the public convenience and necessity so required". Section 401(h), 49 U.S.C.A. § 481(h).

But the Board has not as yet finally acted

---

12. As to the Board's view that pending control by stock ownership, etc. or merger cases are not so interrelated with route authorizations that they preclude final action on the latter, see American Export Airlines, Inc., 3 C.A.B. 294 (1941) and New England Case (Supplemental Opinion), 7 C.A.B. 439 (1946). See, also, Pan American Airways Co. v. Civil Aeronautics Board, 2 Cir., 1941, 121 F.2d 810.

The specter of a "new one-carrier, one-plane" feeder service between Bellingham, Washington, and Phoenix, Arizona, via intermediate points in Washington, Oregon, California, and Arizona, if all of Southwest's proposals are adopted, possibly constituting a rival trunkline service, seems to be the basis of a considerable part of the arguments advanced by the dissenting Board members (see footnote 1, ante) and petitioner. It apparently was the policy of the Board in the initial feeder experimental stage "to authorize operations by local companies whose interests are centered in the area in which they will provide service." See West Coast Case, 6 C.A.B. 961, 996 (1946). After the experiment proved for the most part successful (see 16 Journal of Air Law 379), the Board, however, has in some cases chosen not to so limit the area in which a single short-haul carrier may operate. See, e. g., Monarch-Challenger Merger Case, Docket No. 4129, order of December 16, 1949, and Monarch-Arizona Merger Case, Docket No. 3977, order of April 10, 1950, as the result of which a single feederline company, as far as we know, now operates between Billings, Montana, and El Paso, Texas, along a route servicing points in Montana, Wyoming, Colorado, New Mexico, Arizona, and Texas. The policy considerations can be adequately explored in the pending merger case.

That the Board is fully aware of the interrelation of the Reopened Additional California-Nevada Service Case (Docket No. 2019 et al.) and the Southwest Renewal-United Suspension Case (Docket No. 3718 et al.) is evident from its December 19, 1949, supplemental opinion in the former case, wherein it said with reference to an extension of Southwest's route No. 76 that such authorization would continue "in effect until 60 days after final determination by the Board in the Southwest Renewal case * * * and in the event the existing certificate is renewed, * * * [it would continue] in effect beyond that time for the same period as the remainder of the certificate."

in any one of the above-mentioned mutually exclusive matters. In two of them, substantial progress of the administrative process had been had before Western filed the two competing applications and moved for consolidation of all four. (See footnotes 4 and 5, ante.) Western, in order to prevent any substantial delay, has commendably expressed its willingness to the inclusion of what has been done in the former two matters into the record of a consolidated proceeding and is willing to commit itself to prepare for a comparative hearing on ten days' notice, to present its direct affirmative case on its own applications in not to exceed two days excluding cross-examination, to prepare and file its brief to the examiner within seven days after completion of the consolidated hearing, and to waive a brief to the Board and consent to oral argument as early as seven days after service of the examiner's report. Although the Board perhaps could, on its own initiative, even now accept Western's concessions and order consolidation, it remains for us to decide whether we have the power and, having it, whether we should direct the Board so to conduct its duties.

 The Board is empowered to "conduct its proceedings in such manner as will be conducive to the proper dispatch of business and to the ends of justice." Section 1001 of the Civil Aeronautics Act, 49 U.S.C.A. § 641. It is said that even if the doctrine of the Ashbacker case is not mandatory in the circumstances, the Board has abused its discretion in denying consolidation. Several situations occur to us. We suppose that if Southwest's and West Coast's certificates had been renewed before Western filed its applications, no one would argue that the Board must reopen the whole matter. See KFAB Broadcasting Co. v. Federal Communications Commission, D.C. Cir.1949, 177 F.2d 40, 42; Seaboard & Western Airlines, Inc. v. Civil Aeronautics Board, supra, 181 F.2d 779. Compare Pacific Overseas Airlines Corp. v. Civil Aeronautics Board, 1946, 81 U.S.App.D.C. 268, 161 F.2d 633. The same would be true, we suppose, if the renewal cases had theretofore been argued to the Board and had

reached the decisional stage. On the other hand, counsel informs us that it is the practice of the examiner to specify a period of ten days after the prehearing conference as the time within which new applications may be filed and considered for consolidation. (Compare a similar practice which the Federal Communications Commission has adopted as a regulation—see 49 C.F.R. § 1.387 (b) (3).) We suppose that the Board would abuse its discretion by refusing to consolidate in the proceedings all competing applications filed within such ten-day period if decision in the proceedings without hearing such competing applications would for all practical purposes nullify the right to a hearing thereon. Between these extremes, the manner in which the Board arranges for consideration the matters before it, we believe, is not subject to objection save in cases of clear abuse of discretion as the result of arbitrary or capricious action, which is not the case here.

In our opinion, there has been as yet no effectual disposition of Western's rights to a hearing on any of its applications now pending before the Board. Western states ex parte that if it should be authorized to operate the feeder route between Los Angeles, California, and Bellingham, Washington, substantial savings will accrue to the government. The Post Office Department favors the consolidation. We need only observe, however, that the cost to the government is only one of several unweighted public interest factors in the problem. Such facts are for the Board to consider and we can assume that they will be received and considered by the Board in some proper manner before decision in one case which would affect or control findings in another case. It is obvious that it would be impracticable for all related cases to be brought together in one great comprehensive case and it must be left to the Board to decide where and when consolidation is called for.

 We conclude that the Ashbacker doctrine is not presently applicable to any phase of the several matters in issue because it does not appear that the Board has made any order which finally deprives petitioner

of a right. And we perceive no abuse of discretion in the order denying the petition to consolidate. It is the Board's business to decide whether it can better handle the related matters under separate cases, due consideration being given to the related facts. Our decision here, of course, would not preclude a petition for review if, in the development of the several cases, a condition should arise where a decision of one of the cases forecloses an effective hearing of one of the other cases.

The motion for a stay of proceedings is denied, the show cause order is discharged, and the petition for review is dismissed.