231 F.2d 498
 97 U.S.App.D.C. 339
 COASTAL BEND TELEVISION COMPANY, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, Gulf Coast
Broadcasting Company, Intervenor.
COASTAL BEND TELEVISION COMPANY, Petitioner,
v.
UNITED STATES of America and the Federal Communications
Commission, Respondents, Gulf Coast Broadcasting
Company, Intervenor.
MONONA BROADCASTING COMPANY and Bartell Television
Corporation, Petitioners,
v.
UNITED STATES of America and Federal Communications
Commission, Respondents, Radio Wisconsin, Inc.,
Intervenor.
MONONA BROADCASTING COMPANY and Bartell Television
Corporation, Appellants,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, Radio
Wisconsin, Inc., and Winnebago Television
Corporation, Intervenors.
PREMIER TELEVISION, Inc., and Ohio Valley Television
Company, Appellants,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, Evansville
Television, Inc., Intervenor.
MID-AMERICA BROADCASTING CORPORATION, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, Evansville
Television, Inc., Intervenor.
 Nos. 13034, 13035, 13038, 13039, 13057, 13058.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 12, 1956.
Decided Feb. 14, 1956.
 
 Mr. Paul Dobin, Washington, D.C., for Coastal Bend Television Company in Nos. 13034 and 13035. Mr. Stanley S. Neustadt, Washington, D.C., also entered an appearance for Coastal Bend Television Company.
 Mr. Benito Gaguine, Washington, D.C., for Monona Broadcasting Company [97 U.S.App.D.C. 340] in Nos. 13038 and 13039. Mr. Samuel Miller, Washington, D.C., also entered an appearance for Monona Broadcasting Company.
 Mr. J. Roger Wollenberg, Washington, D.C., for appellants in Nos. 13057 and 13058. Messrs. Andrew G. Haley and Michael H. Bader, Washington, D.C., also entered appearances for appellants in Nos. 13057 and 13058.
 Mr. Richard A. Solomon, Assistant General Counsel, Federal Communications Commission, for appellees. Mr. Warren E. Baker, General Counsel, also entered an appearance for the Federal Communications Commission. Mr. Daniel M. Friedman, Washington, D.C., entered an appearance for the United States in Nos. 13035 and 13038.
 Mr. Paul Segal, Washington, D.C., for Gulf Coast Broadcasting Company, Intervenor, in Nos. 13034 and 13035. Mr. Robert Marmet, Washington, D.C., also entered an appearance for Gulf Coast Broadcasting Company.
 Mr. Arthur W. Scharfeld, Washington, D.C., for Radio Wisconsin, Inc., intervenor in Nos. 13038 and 13039.
 Mr. Vernon L. Wilkinson, Washington, D.C., for Winnebago Television Corporation, intervenor in Nos. 13038 and 13039. Mr. James A. McKenna, Jr., Washington, D.C., also entered an appearance for Winnebago Television Corporation.
 Mr. Vincent A. Pepper, Washington, D.C., for Evansville Television, Inc., intervenor in Nos. 13057 and 13058. Mr. Vincent B. Welch, Washington, D.C., also entered an appearance for Evansville Television, Inc.
 Before BAZELON, WASHINGTON and DANAHER, Circuit Judges.
 WASHINGTON, Circuit Judge.
 
 
 1
 These cases, though not consolidated, present similar problems. In each, a UHF television station complains of action by the Federal Communications Commission which allegedly threatens its economic position by licensing a VHF station to function in its area. The UHF stations, whom we may refer to collectively as 'petitioners,' seek stays of the Commission's actions, pending appeal. All rely on our decision, one judge dissenting, in Greylock Broadcasting Co. v. United States, No. 12,989 (stay granted December 9, 1955).*
 
 
 2
 In Case No. 13,034, Coastal Bend has filed an appeal under Section 402(b) of the Communications Act, 47 U.S.C.A. § 402(b), from actions of the Commission on December 9, 1955, granting the application of Gulf Coast (intervenor here) for a new television station on VHF Channel 6 in Corpus Christi, Texas, and simultaneously denying Coastal Bend's requests to intervene or secure a stay of action in the Corpus Christi Channel 6 proceeding. In Case No. 13,035, Coastal Bend has filed a petition for review under Section 402(a) of the Communications Act, 47 U.S.C.A. § 402(a), from an action of the Commission denying, on November 10, 1955, a Coastal Bend petition to 'deintermix' Corpus Christi, Texas, which sought to delete VHF television assignments from that area and make it an all UHF area.
 
 
 3
 In Cases Nos. 13,038 and 13,039, Monona and Bartell operate UHF Channels 27 and 33, respectively, in Madison, Wisconsin. They are appealing (1) from the December 12, 1955, order of the Commission which granted the application of Radio Wisconsin (intervenor here) for VHF Channel 3 in Madison, Wisconsin, (2) from the December 12, 1955, order of the Commission which denied their petition to intervene in the Radio Wisconsin proceedings, and to reopen the record in that case; or in the alternative to stay any grant in that proceeding until the Commission has disposed of pending rule-making proceedings. In addition, Monona and Bartell are seeking review of the November 10, 1955, order of the Commission which denied their petition to 'deintermix' Madison.
 
 
 4
 [97 U.S.App.D.C. 341] Cases Nos. 13,057 and 13,058 are similar. Premier and Ohio Valley in Case No. 13,057 and Mid-America in Case No. 13,058 are appealing the Commission action of December 27, 1955, which granted VHF Channel 7 to Evansville TV (intervenor), denied appellants' requests to intervene in the proceeding and refused appellants' requests to stay the proceeding pending the completion of the general rule-making proceeding dealing with the UHF-VHF problem.
 
 
 5
 The orders sought to be stayed in the present cases are all adjudicatory, and represent awards of licenses for stations on VHF channels which had long since been finally assigned by the Commission's Sixth Order and Report, adopted in April, 1952, to the communities here involved. Petitioners have thus far made no serious challenge to the adjudicatory proceedings as such, and, indeed, did not even seek to enter them until the hearings had been completed. Petitioners' real aim appears to be to stop these adjudicatory proceedings from reaching a conclusion until what they hope will be a more favorable channel allocation rule is adopted by the Commission. The Commission, however, has decided not to impose such a freeze. This is the sort of quasi-legislative policy decision which is virtually immune from attack in the courts. Nor is it likely that petitioners will be able to establish any retroactive invalidity, because of changed circumstances of otherwise, in the 1952 channel allocations rule under which the adjudicatory proceedings took place. They have thus advanced little to show that they are entitled to succeed on the merits of their appeals to this court.
 
 
 6
 In Greylock, by way of contrast, the Commission's decision was not purely adjudicatory. The Commission there created a new channel which had not existed before under the channel allocation rule, a 'drop-in' in the parlance of the trade. This channel was a VHF channel in what had theretofore been a predominately UHF area. UHF stations had become established there, evidently not anticipating VHF competition. Yet the Commission, under its rule-making procedure, finalized the allocation of the new VHF channel. The petition in Greylock may thus present a substantial question for the consideration of this court. That is not the case here.
 
 
 7
 These differences also result in distinctions between the relative equities of the respective petitioners and intervenors (the VHF interests). The areas served by petitioners in the instant cases had as long ago as April, 1952, been allotted one or more VHF channels.[1] Thus, petitioners opened their UHF stations with notice of the potential competition from VHF stations on channels already allotted to their areas, whereas in the Greylock 'drop-in' situation the UHF station had had no such notice.
 
 
 8
 Petitioners have not shown sufficient likelihood of success on the merits of their cases to justify the granting of stays, in the face of the very great public interest in obtaining additional service through the grants to intervenors. It is, after all, the public interest which must govern.[2] The Commission, of course, has not found that injury to the business of UHF station operators would be in the public interest. But that is not the issue. The Commission, after considering petitioners' pleadings, has affirmatively found that the additional VHF service which intervenors will provide is required in the public interest. If extinction of UHF stations results from the Commission's policy and actions, the responsibility must lie at the Commission's door. See Federal Communications Commission v. Pottsville Broadcasting Co., 1940, 309 U.S. 134, 144-145, 60 S.Ct. 437, 84 L.Ed. 656. For us to interfere with the Commission's decision, [97 U.S.App.D.C. 342] through the issuance of stays, requires a far stronger case than petitioners have made.[3] Stays must be denied.
 
 
 9
 So ordered.
 
 
 10
 BAZELON, Circuit Judge (dissenting).
 
 
 11
 I think the court's action is in conflict with Greylock Broadcasting Co. v. United States.[1] The public and private injury involved here is not distinguishable from that involved in Greylock. The court does not suggest otherwise. But it says that the question presented on the merits of these appeals is not as substantial as the one presented in Greylock. I disagree.
 
 
 12
 It is true that the UHF and VHF allocations to the communities involved here were made at the same time (by the Sixth Report and Order, adopted April 1952) while in Greylock the Commission sought to assign a VHF channel to an area after the UHF stations had been allocated and were operating there. Hence it is said that the UHF stations in the instant cases, unlike the UHF stations in Greylock, accepted their licenses subject to the VHF competition which they now seek to restrain. But these licenses were sought and accepted in reliance upon the premise implicit in the determination in the Sixth Report and Order to intermix UHF and VHF in the same communities, namely, that UHF could exist with VHF competition. Now the Commission recognizes that that premise, which everyone accepted in good faith, did not withstand the test of experience. Accordingly it has ordered a new rule-making proceeding for the purpose of re-examining its previous determination to intermix. Relying upon the undeniable fact that the VHF operations contemplated in the instant cases would inevitably destroy their UHF operations, our appellants petitioned the Commission to stay the VHF grants pending resolution of the new rule-making proceeding. This refusal frames the question on the merits of these appeals, namely, whether due process and common sense require the Commission to consider de-intermixture and other proposals as means of saving UHF before leaving it to face certain destruction on the theretofore uncharted rocks of VHF competition.
 
 
 13
 The question we found substantial enough to support the grant of a stay in Greylock was whether due process considerations required the Commission to pass upon proposed solutions in the rule-making proceeding before allocating a VHF channel whose eventual operation would destroy Greylock's UHF operation. It seems to me that the authorizations in these cases to actually operate a VHF station present an even sharper and more substantial question of due process.
 
 
 
 *
 An opinion on reconsideration is being filed today, 97 U.S.App.D.C. 414, 231 F.2d 748
 
 
 [1]
 In Nos. 13,038 and 13,039, one channel; in the other cases, two
 
 
 [2]
 Yakus v. United States, 1944, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834; Scripps-Howard Radio v. Federal Communications Commission, 1942, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229
 
 
 [3]
 We note, also, that in No. 13,058 the petitioner (Mid-America) is now and for some time has been off the air and hence cannot establish irreparable injury resulting from the Commission's action
 
 
 [1]
 No. 12,989, stay granted Dec. 9, 1955. An opinion on reconsideration is being filed today, 97 U.S.App.D.C. 414, 231 F.2d 748