**C. J. COMMUNITY SERVICES, Inc., Bridgeport, Washington, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

No. 13204.

United States Court of Appeals District of Columbia Circuit.

Argued June 19, 1956.

Decided May 3, 1957.

Messrs. Richard K. Pelz, Washington, D. C., of the bar of the Supreme Court of Washington, pro hac vice, by special leave of Court, and James R. Browning, Washington, D. C., for appellant.

Mr. Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission, with whom Messrs. Warren E.

Baker, General Counsel, Federal Communications Commission, Daniel R. Ohlbaum and Richard S. Rhodes, Counsel, Federal Communications Commission, were on the brief for appellee.

Before WASHINGTON, DANAHER and BASTIAN, Circuit Judges.

DANAHER, Circuit Judge.

Purporting to act in accordance with the provisions of § 312(c) of the Communications Act of 1934, as amended,[1] the Commission ordered the appellant to cease and desist from operating "television broadcast stations," without a license issued by the Commission, from carrying on such operation "without a person holding an appropriate operator's license" from the Commission, and from rebroadcasting television programs "without having first obtained from the originating station express authority to do so." Appellant has challenged the order principally on the ground that its "station" is not subject to the jurisdiction of the Commission, but if it should be found to be, the Commission, in the public interest, erred in failing to exercise discretion to permit operation.

Bridgeport, a town with a population of 800, is so situated in the Columbia River gorge in the State of Washington that no usable television signal, coming directly from any licensed television station, is available to its inhabitants. The town is not within the service area of any existing television station. It is about 110 miles east of Spokane, is about 90 miles south of the Canadian border, and lies at greater distances from the other borders of the State. Surrounded by a rugged, high plateau terrain, approximately one thousand feet above the elevation of the town, its interested inhabitants found it impossible to receive a television signal. Investigation* developed that a booster station could be

installed on Dyer Mountain, about 1,400 feet above the town, capable of receiving signals on Channel 4, from Station KXLY–TV and on Channel 6 from Station KHQ–TV, both in Spokane. The appellant, *a non-profit corporation,* was formed with about 80 members who pay an annual fee of $5. The appellant paid one of its members $1 for a Channel 4 booster installation and, by subscription, raised about $950 for the installation of its Channel 6 booster. The booster operation is automatic, requiring the presence of no operator. The booster signals cause no interference with direct television signal reception in Bridgeport, for no direct reception is there possible. There is no electrical interference with any other existing radio or television broadcast service authorized under the Commission's Rules and Standards. The apparatus transmits a usable signal to the town of Bridgeport, over a cone shaped area extending outward from the transmitter about 8 to 10 miles, and about 5 miles across at its widest point. There thus is brought to the residences within the affected area a first service which provides the inhabitants of this mountain town with an important means of receiving news and information, entertainment and education. People thus are linked on Channel 4 with the programs of the Columbia Broadcasting System and, on Channel 6, with those of the National Broadcasting Company and American Broadcasting Company networks. The originating television stations, the Examiner noted, had informed the appellant that they would have no objection to authorizing the rebroadcast to Bridgeport of their programs "when and if the booster station should be licensed or otherwise sanctioned by the Commission." In short, the record discloses "the operation of an unlicensed fixed low-power television signal booster installation near the center of the State

---

1. 48 Stat. 1084 (1934), as amended, 47 U.S.C.A. § 312(c) (1952).

* The low-cost amplifier installation decided upon by the interested participants, operated on a non-profit basis, is in marked contrast with a community antenna television system which was here deemed economically prohibitive. The CATV system would have cost about $28,000.

of Washington which radiates an amplified broadcast signal but does not transmit detectable energy or communications beyond the borders of that State," as the Examiner concluded. He also found that no application had been made for, and the Commission had not issued a construction permit or license for the Bridgeport booster station. Indeed, the Rules and Standards do not now provide for the licensed operation of such an installation.

We thus have a situation where the Commission urges that all communications by radio are either in interstate commerce or affected so as to subject them to the regulatory authority of the Commission. At the same time, the Commission has not made it possible, after all these years, for the issuance of a license to a booster installation, such as is here disclosed. The Examiner concluded that the question before him was not whether a booster station operation may be licensed but whether or not it had been proved that an unlicensed operation should be abated.[2] Finding that the proof was inadequate to demonstrate that the public interest would be served by abatement, and hence, that a cease and desist order should not be issued, he concluded further:

"In summary, it is concluded that the television booster station does not cause objectionable or harmful interference to any existing or authorized radio broadcast or communications transmission or reception. This new use of radio, in practice, affords a larger and more effective use of television broadcast channels so that many families in the area are provided with a better, dependable and more economical television program service. The consequences of issuing a cease and desist order would be to take away from those who receive the booster station's signals the television serv-

ice they now enjoy. In this remotely situated and mountain-isolated community a public importance attaches to the people's being informed and entertained through the television medium; of course, there exists no vested right in either those who receive or those who transmit, to a continuation of the operation; the contrary is here declared. But, the utilization of radio channels and the Commission's essential controls thereof are not impaired or threatened by the television booster station hereinabove discussed, and no other substantial reasons support a conclusion that the public interest, convenience, and necessity would be served by issuing the proposed cease and desist order."

Appellant insists that its installation is not covered by the Act in that the Commission's jurisdiction is limited by § 301, 47 U.S.C.A. § 301, pertinent language reading:

"* * * No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio * * * (d) within any State when the effects of such use extend beyond the borders of said State, or when interference is caused by such use or operation with the transmission of such energy, communications, or signals from within said State to any place beyond its borders, or from any place beyond its borders to any place within said State, or with the transmission or reception of such energy, communications, or signals from and/or to places beyond the borders of said State * * * except under and in accordance with this Act and with a license in that behalf granted under the provisions of this Act."

■ We are satisfied from a reading of the section as a whole that Con-

2. "In any case where a hearing is conducted pursuant to the provisions of this section, both the burden of proceeding with the introduction of evidence and the burden of proof shall be upon the Commission." § 312(d) of the Act, supra note 1.

gress intended to assert control by the Federal Government over "all the channels of interstate * * * radio transmission," and that the sweep of the Commission's authority includes the booster station here involved.[3] But it is equally clear that § 301 of the Act reflected the intention of Congress to provide "for the *use* of *such* channels." Thus, while a broadcasting station, as defined in the Act, which affects interstate communication clearly must be licensed, the Commission must make provision for the issuance of an appropriate license. We are not unmindful that the Act expressly provided in section 1, 47 U.S.C.A. § 151, that the Commission was created for the purpose of regulating interstate commerce in communication by radio "so as to make available, so far as possible, to all the people of the United States a rapid, efficient, Nation-wide, and world-wide wire and radio communication service." Thus it is the clear duty of the Commission to devise through, its rule-making authority, the basis upon which "all the people of the United States" may receive service through a licensed station.[4]

The Commission seems to argue, both in its brief to us and in its opinion under review, that we must in this case, in sweeping fashion, deal with all unlicensed booster stations, wherever they are, or whatever the particular problem. But we are not concerned with all such stations, we are concerned only with the problem before us. On this record it has been demonstrated that it is possible without objectionable interference to tele-

cast the signals of the two Spokane stations to the Bridgeport area.[5]

Negligible as the interference may be, we are bound to accept the Commission's conclusion that this particular installation can be said to be operating in derogation of the Commission's maintenance of control over the channels of interstate radio communication, but only because the station is unlicensed. The Commission says that the respondent is in violation of § 318 of the Act, 47 U.S.C.A. § 318, in that a licensed operator is thereby required, although this booster is automatic. We understand that section to provide that, in the public interest, the Commission has power to make special regulations governing the granting of licenses for the use of automatic radio devices and for their operation. The Commission says that the Bridgeport booster is further in violation of § 325 (a), 47 U.S.C.A. § 325(a), since the two Spokane stations had not granted express authority for the rebroadcast of their programs. Yet the record shows that both Spokane stations have no objection to authorizing such rebroadcasts when and if the Bridgeport station should be licensed or otherwise sanctioned by the Commission. Despite the anomalies of the situation, the Commission argues in its brief that "the alternative to licensed operation is not unlicensed operation, but no operation." The Commission thus says, in effect, that instead of serving the public interest by making reception available, it has no alternative whatever but the ouster of the booster.[6]

█ We think there is an alternative. The Commission's Decision noted that

3. Cf. Allen B. Dumont Laboratories v. Carroll, 3 Cir., 1950, 184 F.2d 153, 155, certiorari denied 1951, 340 U.S. 929, 71 S.Ct. 490, 95 L.Ed. 670.

4. "Can Community Antenna TV Be Enjoined?" 20 Albany L.Rev. 69, 75 (1956).

5. The only interference which the Commission's engineers could demonstrate was located in the residence of one Crabtree. There, by various adjustments of his antenna, Crabtree's set could be made to produce some "ghosting" of the Spo-

kane signals which were believed to be ricocheted from a mountain side. Even so, it would seem sufficient to bring this installation within the reach of § 301, supra.

6. Our order of March 8, 1956, stayed the effectiveness of the Commission's cease and desist order pending "final disposition of this appeal, or until further order of this Court." We purposefully had withheld earlier disposition of this case because of the Commission's impending rule-making.

"The Rules and Standards do not now provide for the licensed operation of such an installation." Thus, despite the Commission's clear duty to "provide for the use of such channels," throughout the past 22 years of the Commission's life it has failed to adopt rules under which signals from stations KXLY–TV and KHQ–TV, useless in Bridgeport without the booster, may be picked up, reinvigorated and made available to the residents of the town. We suggest, therefore, that the Commission may well get on with the rule-making proceedings apparently contemplated in its Docket 11331 and in its Docket 11611 in which is to be examined the feasibility of "booster," or translator stations, or possibly other devices, as a means of filling in the service area of television stations.

Certainly, when a violation of the Act has been shown, the Commission may revoke a station license, but, under § 312(b), it also may impose a lesser sanction. It may issue a cease and desist order. By the same token, under § 312 (c) the Commission may consider grounds offered by a "person involved" in a § 312(b) complaint as to "why * * * a cease and desist order should *not* be issued." Clearly the Commission must weigh the circumstances, for Congress says that the cease and desist "shall" be issued *only* if it be decided that the order "should issue." Congress knew very well what it was saying. It surely knows the difference between "should" and "shall." [7]

Here the Commission reversed the Examiner's conclusion that the cease and desist order "should" not issue. It is clear that the Commission decided it had no discretion, once it found a violation to

exist. It even so argued. Therein lies its error. Within the scope of our review under § 402(g) of the Act, 47 U.S.C.A. § 402(g) and § 10 of the Administrative Procedure Act,[8] it is our duty, *inter alia*, to decide all relevant questions of law and to interpret statutory provisions. We will not determine that the agency rule-making action has been unreasonably delayed or that its instant action was arbitrary. We say only that, short of the appellant's statutory right, the Commission acted mistakenly in its belief that it lacked discretion to withhold the issuance of a cease and desist order, and upon this point the Commission's order must be reversed.

As we remand the case, we observe that the Commission itself may conclude that it is manifestly inequitable that the appellant be subject to a cease and desist order when the Commission has failed to provide an administrative mechanism through which a license may be procured. We have no doubt that the Commission will consider the problem in the light of the well known standard of "public convenience, interest, or necessity." [9] We do not undertake to invade the administrative province. Rather, it is our desire to adjust relief "to the exigencies of the case in accordance with the equitable principles governing judicial action. The purpose of the judicial review is consonant with that of the administrative proceeding itself,—to secure a just result with a minimum of technical requirements." [10]

Had the Commission's jurisdiction been clear from the outset, we have no doubt the appellant would long since have applied for an STA [11] pending comple-

**7.** "The defendant 'shall' be dealt with in a stated way; it is the language of command * * *." Escoe v. Zerbst, 1935, 295 U.S. 490, 493, 55 S.Ct. 818, 820, 79 L.Ed. 1566.

**8.** 60 Stat. 243, 5 U.S.C.A. § 1009(e) (1952).

**9.** Federal Communications Comm. v. Pottsville Broadcasting Co., 1940, 309 U.S. 134, 145, 60 S.Ct. 437, 442, 84 L. Ed. 656.

**10.** Ford Motor Co. v. National Labor Relations Board, 1939, 305 U.S. 364, 373, 59 S.Ct. 301, 307, 83 L.Ed. 221.

**11.** We assume that an application for experimental authorization is appropriate since we are not here concerned with a standard broadcast station and since the Commission is already advised with full particulars as to the purpose for which the STA might issue. Cf. 47 C.F.R. § 1.324 (1953); see Part 4 and Part 5 of the Commission's Rules.

tion of the rule-making proceedings. We think it should now have that opportunity, especially since so much of the record involved as the major issue, the applicability of § 301.[12] We assume the appellant will file its application with reasonable promptitude.

If after consideration of appellant's application, the Commission finds itself unable to authorize the issuance of an STA, the Commission may reopen the "show cause" proceedings. Now assured that it has discretion which may be exercised under § 312(c), it is to be expected that the Commission will conform its action to the provisions of § 312 so far as applicable.[13]

Reversed and remanded for proceedings not inconsistent with this opinion.

WASHINGTON, Circuit Judge (concurring in the result).

The present situation is a harsh one. The Commission might well have been better advised to ignore the existence of booster stations such as this until the time when it is prepared to deal with them on some basis more equitable than mere repression. But once it decided to take action, if it remained within its statutory authority, its policy decisions must rest on its own doorstep. Federal Communications Commission v. Pottsville Broadcasting Co., 1940, 309 U.S. 134, 144–145, 60 S.Ct. 437, 84 L.Ed. 656; Federal Communications Commission v. WJR, 1949, 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353; Coastal Bend Television Co. v. Federal Communications Commission, 1956, 98 U.S.App.D.C. 251, 234 F.2d 686.

This appeal presents two questions: whether the Commission has jurisdiction over the booster station and whether the issuance of a cease and desist order accords with Section 312 of the Act. Since the Commission's engineers demonstrated that the operation of the booster station caused noticeable interference with the reception of signals originating out-of-state, I agree that the station was forbidden by Section 301 of the Act from operating without a license.[1]

Turning to the issuance of the cease and desist order, it seems clear that the Commission misconceived its statutory authority. The provisions for the issuance of cease and desist orders were added to the Communications Act in 1952, 66 Stat. 716, to provide the Commission with a sanction less severe than license revocation. See S.Rep. 44, 82nd Cong., 1st Sess. 10 (1951). But, in providing for this remedy, Congress did not

12. It will be remembered that in Coastal Bend Television Co. v. Federal Communications Comm., 1956, 97 U.S.App.D.C. 339, 231 F.2d 498 and Gerico Investment Co. v. Federal Communications Comm., 1957, 99 U.S.App.D.C. 379, 240 F.2d 410, we were dealing with problems arising pursuant to rule-making proceedings which had culminated in the Commission's Sixth Report and Order, 17 Fed.Reg. 3905. Thus, unlike the present case, those cases presented no question whatever as to the Commission's jurisdiction over the television channels.

13. For examples of situations involving Commission consideration of its § 312 authority, see In re Application of Tulsa Broadcasting Co., 12 Pike & Fischer Radio Reg. 1256, 1265 (1955) and In re Application of Gulf Television Co., 11 Pike & Fischer Radio Reg. 460, 464 (1954). In the latter case the Commission concluded that § 312 creates no rights in third parties, "but gives to the

Commission complete discretion in the exercise of the powers granted thereunder. Accordingly, in the exercise of such discretion, the Commission believes that the above requests should be denied." Cf. 47 C.F.R. §§ 1.401 and 1.402 (1956), touching procedure with respect to the issuance of cease and desist orders or "for dismissing the proceeding," as the case may be.

1. That section provides: "* * * No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio * * (d) within any State * * * when interference is caused by such use or operation with the transmission of such energy, communications, or signals * * from any place beyond its borders to any place within said State * * * except under and in accordance with this Act and with a license in that behalf granted under the provisions of this Act."

utilize the same statutory framework which it had used in giving similar power to other agencies. While the procedures for instituting complaints vary among the agencies,[2] once a complaint has been issued and a hearing held to investigate an alleged violation of the agency's statute or rules, it is usually provided that the agency shall issue a cease and desist order *if it determines that a violation has occurred.*[3] But the Federal Communications Commission is instructed to issue such an order *if it determines that one "should issue."* While these words standing alone might be thought to give the Commission authority to consider only whether a violation has occurred, comparison of the statute with those governing other agencies indicates that Congress expected the Commission to consider the issuance of an order against a somewhat broader frame of reference. There is no need in this case to determine precisely the limits of the authority which the statute confers upon the Commission,[4] for here the Commission concluded that it possessed no authority whatever to determine whether an order "should issue," once the fact of violation was established.

We need not now determine what effect, if any, the broad policy statement of Section 1 of the Act has on situations such as the present. The Commission has docketed rule-making proceedings to consider, among other things, the operation of booster stations. Whatever decisions may be reached therein regarding the appropriateness of licensing such operations are not the present concern of this court.

2. Compare 29 U.S.C.A. § 160(b) (1952) (N.L.R.B.) with 49 U.S.C.A. § 13(1) (1952) (I.C.C.). See, generally, Jaffe, The Individual Right to Initiate Administrative Process, 25 Iowa L.Rev. 485 (1940).

3. See, e. g., 49 U.S.C.A. § 304(c) (1952) (I.C.C.); 49 U.S.C.A. § 642(c) (1952) (C.A.B.); 29 U.S.C.A. § 160(c) (1952) (N.L.R.B.); 15 U.S.C.A. § 45(b) (1952) (F.T.C.).

4. It should perhaps be noted that there is here no issue of agency action directed solely against one of a group similarly situated, cf. C. E. Niehoff & Co. v. Federal Trade Commission, 7 Cir., 1957, 241 F.2d 37; Moog Industries v. Federal Trade Commission, 8 Cir., 238 F.2d 43, certiorari granted, 1957, 353 U.S. 908, 77 S.Ct. 665, 1 L.Ed.2d 662.